IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TALKING WALLS INC,

    Plaintiff,
v.                                              CASE NO. 1:02-cv-00041-MP-AK

HARTFORD CASUALTY INSURANCE COMPANY,

    Defendant.
_____/

## O R D E R

This matter is before the Court on Doc. 244, Defendant's Motion in Limine for Exclusion of Expert Testimony of William Wagner. Also pending before the Court are the parties opposing trial briefs, Docs. 249 and 252, on the proper interest rate on prejudgment interest. The Court has held a hearing on both of these matters. For the reasons below, the Court grants the Motion in Limine and finds in favor of Defendant on the issue of prejudgment interest.

### BACKGROUND

This case concerns a fire at a warehouse leased by the Plaintiff, Talking Walls, Inc. The Plaintiff filed a claim with their insurer, the Defendant, for the loss. The Defendant did not pay the claim, alleging arson and misrepresentation on behalf of the Plaintiff and its agents. This suit ensued. The Plaintiff brought two counts against the Defendant, one for breach of contract and one for bad faith denial of an insurance claim. This Court previously abated the bad faith count until after the breach of contract claim was heard. The case is currently pending trial on the breach of contract count.

## A. Motion in Limine

Defendant has filed a Motion in Limine For Exclusion of Expert Testimony of William Wagner, Doc. 244, to which Plaintiff has filed a Response, Doc. 256. Specifically, Defendant seeks to exclude Wagner's testimony as to the cause and origin of the warehouse fire. Defendant claims Wagner's testimony should be excluded for two reasons. First, Defendant claims Wagner lacks the qualifications to give expert testimony. Second, Defendant claims Wagner's methodology utilized in reaching his conclusion lacks sufficient reliability. This Court finds that Wagner lacks sufficient qualifications to make a determination of the cause and origin of a fire and therefore does not reach the issue of whether he utilized adequate methodology and data.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Under that rule, a court may permit testimony of a witness properly qualified as an expert. FRE 702. This requires a "rigorous three part inquiry." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). The Court must determine whether

> (1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. Because the Court finds that Wagner is not qualified under the first prong, the Court does not need to reach the second two inquiries.

Wagner's credential's are not disputed by either party. Wagner has not received a college degree, yet he has taken several years of college courses. He received certification as a fire fighter in 1979, a fire inspector in 1988 and as a fire instructor in 1993. Notably, none of these

certification titles signifies an ability to determine the cause and origin of fires. That certification, which Wagner does not possess, is for a fire investigator. Wagner has worked as the Deputy Fire Marshall for Monroe County, Florida, from 1988 to 1998. He has been the Fire Chief for the Village of Islamorada in the Florida Keys from 1998 to the present time. Wagner is a member of multiple fire chief, arson investigation, and other professional associations.

In his role as Fire Chief, Wagner gained some field experience with cause and origin fire investigation. He was involved in the investigation process for approximately one year in 1998. Additionally, Wagner was involved in some fire investigation as the Deputy Fire Marshall for Monroe County. If any fire investigation was suspicious, however, as it is in the instant case, Wagner would call for the assistance of the State Fire Marshall in investigating the cause and origin of the fire. Wagner's only formal education in fire investigation was a 40 hours course he took in 1988. Since 1998 Wagner has had no direct experience with fire investigation. His primary responsibilities as they relate to fire investigation now includes observing, managing and supervising the fire investigators.

The proponent of the expert bears the burden of proving that the witness is properly qualified as an "expert" witness. Id. While both parties agree that the test for an expert's qualifications should be liberally construed, it is also clear that a witness is not an expert merely because he claims to be. See Pride v. Bic Corp., 218 F.3d 566, 577 (6th Cir. 2000); see also, Duabert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 595 (1993). The Committee Note to the 2000 Amendment of Rule 702 states that when an expert witness is relying primarily on experience, as Wagner is, since he does not have extensive formal training or certification in fire cause and origin investigation, "then the witness must explain how that experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FRE 702 advisory committee's notes (2000 amends.); see also, Frazier, 387 F.3d at 1261. The Court held a hearing on this matter, at which time each party was free to present witnesses and evidence in support of their arguments. Plaintiff did not present Wagner nor any other evidence at that hearing to bolster its argument. Each party reiterated their arguments, but rested on the evidence presented in their pleadings.[1] Upon hearing the arguments of Plaintiff and Defendant, and reviewing the pleadings, the Court finds Plaintiff has not satisfied its burden of showing that Wagner has the qualifications to states his opinion as an expert witness on the cause and origin of the fire at issue.

The Court has no doubt that Wagner would qualify as an expert in the proper administration of a fire department or on some other fire related topics, but he does not have the requisite training nor experience to qualify as an expert in the investigation of fire cause and origin. See Weisgram v. Marley Co., 169 F.3d 514, 518 (8th Cir. 1999)(expert fire investigator was not an electrical expert and therefore was not qualified to opine that fire started from a faulty heater); American Family Ins. Group v. JVC Americas Corp., 2001 WL 1618454 (electrical engineer was qualified to testify as to electrical fire origins, but not the cause and origin of fires in general, despite testimony that he had "attended fire investigation seminars and received 'on-the-job training' during his investigation of 600-plus fires"); see also, Smelser v. Norfolk Southern Ry. Co., 105 F.3d 299, 305 (6th Cir. 1997) (abrogation recognized on a different issue)(witness qualified as a biomechanics expert was not qualified to give medical opinions on the cause of a specific injury). Wagner's reliance on other fire investigators during previous

---

[1] Plaintiff has filed a copy of Wagner's deposition, Doc. 283.

investigations when they became suspicious is also indicative of his lack of expertise. If Wagner would not rely on his own opinion as an expert investigator, this Court will not either.

Plaintiff has raised the possibility of Wagner testifying as to the amount of smoke a non-incendiary fire can create and the improper handling of evidence by Defendant's expert witnesses. Defendant has not specifically raised any objection to those lines of questions. The Court withholds judgment on the admissibility of Wagner's testimony on those issues. Plaintiff is directed to proffer any testimony it intends to offer from Wagner.

## B. Prejudgment Interest Rate

Several issues were raised by the parties in a pre-trial stipulation, Doc. 240, one of which remains outstanding. This concerns the prejudgment interest rate. Specifically, the parties stipulated that, if successful, the Plaintiff will be entitled to prejudgment interest on its recovery. The parties have agreed on interest rates for particular years that may be applied to Plaintiff's damages should Plaintiff prevail at trial. The parties also stipulated that the respective rates of interest since the year of the fire (2001) were 11% for 2001, 9% for 2002, 6% for 2003, and 7% for 2004 with 2005 to be determined. The parties dispute, however, whether the rate stays constant at the rate in effect at the time it commences to run, or whether it changes from year to year. The Plaintiff contends that the prejudgment interest assessed on any damages awarded in the instant case be frozen at 11% for the entire time period, because that was the interest rate in effect on the "loss payable date." The Defendant contends that the interest rate should be computed separately for each year utilizing the applicable statutory rate in effect.

The issue of prejudgment interest is addressed in the Florida Statutes. See Fla. Stat. § 687.01. In the past, this statute provided for a fixed interest rate to be applied to prejudgment

interest obligations that did not have a contractual rate. However, in 1994, the legislature amended this prejudgment interest statute so that "[i]n all cases where interest shall accrue without a special contract for the rate thereof the rate is the rate provided for in s. 55.03." Fla. Stat. § 687.01. During that same legislative session, the legislature revised section 55.03. Section 55.03 had established the interest rates for post-judgment interest. The legislature revised this statute by providing a method by which the Comptroller (now known as the Chief Financial Officer) sets the interest rate each year payable on judgments or decrees entered on or after the following January 1st. From that point on, the rate was subject to fluctuation from year to year according to "market conditions." Accordingly, after the above revisions to sections 687.01 and 55.03, the same fluctuating interest rate applied to the determination of both prejudgement interest and postjudgment interest. See Acadia Partners v. Tompkins, 759 So.2d 732 (Fla. 5th DCA 2000); Keanie v. Goldy, 698 So.2d 1264 (Fla. 5th DCA 1997); Beverly Enterprises v. Spilman, 689 So.2d 1230 (Fla. 5th DCA 1997).

The problems for court clerks inherent in administering this flexible interest rate as to *postjudgment* interest led to the amendment of Section 55.03 in 1997 by the Florida Legislature. The legislature added the following provision: "(3) The interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid." Fla. Stat. § 55.03(3). However, there was no mention of any problems relating to the calculation and imposition of *prejudgment* interest when the law was amended.

Plaintiff makes two key arguments that are ultimately without merit. First, Plaintiff cites Argonaut Insurance Co. v. May Plumbing Co., 474 So. 2d 212 (Fla. 1985) for the proposition that the judiciary does not have discretion in the application of differing rates of interest. The

Plaintiff's reliance on Argonaut is misplaced. In Argonaut, the court found that the trial judge had improperly "awarded interest on an arbitrary and apparently punitive escalating scale–6 % for the first 965 days, 8 % for the next 1,095 days, 10 % for 365 days and 12 % for seventy-seven days. Id. at 215. The court noted that "there is no discretion in the rate of interest." Id. Not only are the facts in Argonaut distinguishable from those of the instant case,[2] but it must be noted that Argonaut was decided in 1985, during which time the statute provided for a fixed interest rate to be applied to prejudgment interest obligations that did not have a contractual rate.

     Plaintiff further argues that the addition of subsection (3) to Section 55.03 changed the method in which prejudgment interest was calculated. Well before the 1994 amendments, the Florida Supreme Court pronounced that prejudgment interest fluctuates depending on the statutory rate in effect during the periods that prejudgment interest is charged. See Trend Coin Co. v. Honeywell, Inc., 487 So.2d 1029 (Fla. 1986). In Trend, the Court recognized that due to changing economic and market conditions, the Florida legislature had seen fit to increase the interest rate on judgments from 6% to 12% effective July 1, 1982. In order to carry out that legislative intent, the Court held that since the date of loss in that case was March 9, 1980, and the damages verdict occurred after the 1982 amendment, prejudgment interest would be computed at 6% from the date of loss until July 1, 1982, and at 12% thereafter. Id. at 1030. Plaintiff argues that Trend applies to "old statutes," or, cases in which the time periods for which prejudgment interest would be computed occurred prior to the 1994 and 1998 revisions. However, Trend has never been overruled or receded from.

     Defendant directs the Court to Zunde v. International Paper Company, 2000 WL 1763843

---

[2] There is no intent to apply arbitrary interest rates, nor is the Defendant advocating this. The Defendant is simply asking the court to apply the rate prescribe by the legislature during the applicable years.

(M.D. Fla. 2000).  In <u>Zunde</u>, the court was called upon to compute prejudgment interest under Florida law from January 1, 1998, when the plaintiff was wrongfully denied severance pay benefits through the date the trial court entered its judgment in plaintiff's favor, January 11, 2000.  Pursuant to Florida Statutes §§ 55.03 and 687.01, the court held that the proper method of calculation was the principal amount of the judgment multiplied by 10 % per annum, noting that the annual interest rate during that period remained unchanged.  <u>Id.</u> at 2 n.1.  This suggests that the court would have adjusted the rate had it changed over that time period.

This Court finds that the interest rate should be computed separately for each year utilizing the applicable statutory rate in effect, specifically 11% for 2001, 9% for 2002, 6% for 2003, and 7% for 2004, with 2005 to be determined or agreed upon by the parties.

**ORDERED AND ADJUDGED:**

1. Defendant's Motion in Limine, Doc. 244, is GRANTED.  Plaintiff's proposed expert witness William Wagner will not be permitted to testify as to the cause and origin of the warehouse fire.  Any other proposed testimony of Wagner shall be first proffered to the Court and Defendant will be given an opportunity to raise any objections.

2. The Court finds in favor of Defendant on the issue of prejudgment interest.  The interest rate shall be computed separately for each year utilizing the applicable statutory rate in effect, specifically 11% for 2001, 9% for 2002, 6% for 2003, and 7% for 2004, with 2005 to be determined or agreed upon by the parties.

**DONE AND ORDERED** this   5th   day of July, 2005.

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge